IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GWEN S. M., | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 22-CV-297-MTS |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       **Defendant.** | ) |

**OPINION AND ORDER**

Plaintiff Gwen S. M. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **affirms** the Commissioner's decision denying benefits.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is

2

"more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  A court, however, may not re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).  Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## Background and Procedural History

On August 11, 2020, Plaintiff filed an application for Title II disability insurance benefits (42 U.S.C. § 401, *et seq.*) under the Social Security Act.  (R. 12, 280-83).  On January 29, 2021, Plaintiff filed an application for Title XVI supplemental security income (42 U.S.C. § 1381, *et seq.*).  (R. 12).  She alleged an inability to work beginning on April 1, 2019, due to limitations resulting from nerve damage, arthritis, bipolar disorder, depression, and diabetes.  (R. 302, 306).  Plaintiff was forty-six years old at the time of the ALJ's decision.  (R. 21, 302).  She obtained a GED and has past relevant work as a retail sales associate.  (R. 21, 45, 307).

Plaintiff's applications were denied both initially and upon reconsideration.  (R. 12, 176-79, 183-85, 188-92, 193-95).  At Plaintiff's request, ALJ Pearline Hardy conducted an administrative hearing on January 14, 2022.  The hearing was held by teleconference pursuant to COVID-19 procedures.  (R. 12, 29-50, 199-200, 201-02).  At the hearing, it was noted Plaintiff

had amended her onset date to July 25, 2020. (R. 12, 33-34, 293). ALJ Hardy issued a decision on January 26, 2022, denying benefits and finding Plaintiff not disabled. (R. 12-23). Plaintiff sought review by the Appeals Council, which it denied on May 10, 2022. (R. 1-5). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since July 25, 2020, the amended alleged onset date. (R. 14). At step two, she found Plaintiff suffered from severe impairments of diabetes mellitus, asthma, morbid obesity, depression, and anxiety. (R. 15). The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 16-17). Based upon her consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform light exertional work as defined in 20 CFR 404.1567(b) and 416.967(b)" with the following additional limitations:

> [T]he option to sit for 10 minutes after every 1 hour of standing as long as she is not off task or away from the workstation; no climbing of ladders, ropes, or scaffolding; occasional climbing of ramps and stairs; occasional kneeling, crouching, and crawling; no work at unprotected heights or around dangerous machinery; simple, routine tasks with occasional interaction with others; off task 10% of the time during an 8-hour workday due to mental health symptoms; and absent 1 day per month due to mental health symptoms.

(R. 17-18).

At step four, the ALJ determined Plaintiff was unable to perform her past relevant work as a retail sales associate. (R. 21). After consultation with a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of mail clerk, assembler of printed products, and storage facility rental clerk, all of which she found existed in significant

numbers in the national economy. (R. 21-22, 45-46). As a result, the ALJ found Plaintiff had not been under a disability from April 1, 2019, through the date of the decision. (R. 22-23).

## Errors Alleged for Review

Plaintiff raises one main allegation of error in her challenge to the Commissioner's denial of benefits on appeal. She contends the ALJ failed to comply with Social Security Ruling ("SSR") 96-8p, because she did not provide a narrative discussion explaining how the evidence supported the mental RFC. As part of her argument, Plaintiff also asserts that the ALJ did not sufficiently develop the record concerning Plaintiff's mental work-related functional abilities, and she failed to account for all of Plaintiff's mental limitations in the RFC. *See* Docket No. 15 at 6-11. The Commissioner counters that the ALJ properly evaluated the evidence, and the decision is supported by substantial evidence. *See* Docket No. 21 at 1-2.

## Narrative Discussion of Plaintiff's Mental RFC

Plaintiff argues the ALJ failed to explain how the evidence she summarized in the decision supported the mental limitations she included in the RFC assessment, contrary to the requirements of SSR 96-8p. "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on the evidence in the case record. *Id*. She

5

must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. If there is a conflict between the RFC and a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

In support of her argument, Plaintiff primarily relies on a case from this district, *Natalie L.F. v. Kijakazi*, 2022 WL 265870 (N.D. Okla. Jan. 28, 2022), wherein the court determined the ALJ failed to explain how the medical and non-medical evidence supported the RFC assessment. *Id*. at *4. The court concluded the ALJ's decision was not supported by substantial evidence because the ALJ did not include a narrative discussion explaining "the evidentiary basis and rationale for the RFC assessment as required by SSR 96-8p," which precluded the court from performing a meaningful review of the RFC determination. *Id*. Plaintiff maintains that the ALJ's RFC analysis in this case suffers from the same fate as the RFC in *Natalie*, and for the same reasons.

This Court disagrees with Plaintiff's application of the *Natalie* case to this case. Unlike the ALJ in *Natalie*, the ALJ in this case specifically addressed the evidence of record regarding Plaintiff's severe mental impairments of depression and anxiety, not only summarizing the medical and non-medical evidence, but also explaining how such evidence supported the mental limitations included in the RFC. The ALJ outlined Plaintiff's complaints from her function report, including that her mental impairments affected her ability to remember, complete tasks, concentrate, understand, follow instructions, and get along with others. (R. 18, 319). She also discussed

Plaintiff's hearing testimony, wherein Plaintiff testified she was depressed because of the loss of family members, had difficulty interacting with others, cried in public places, and did not finish tasks. She also noted Plaintiff's testimony that when she became stressed or when her blood pressure rose, Plaintiff experienced an elevated heart rate. (R. 18, 19, 36-38, 42-43).

The ALJ also discussed Plaintiff's complaints to her health care providers of increased depression and crying, loss of interest in activities, decreased concentration, excessive worrying, and low energy. (R. 19, 457, 637). She noted Plaintiff's Patient Health Questionnaire, which indicated "moderately severe depression." (R. 19, 512, 675). She found such findings were consistent with Plaintiff's treatment records, which included prescription medication for anxiety disorder and major depressive disorder and findings of sad or flat affect, anxious appearance, and depressed mood. (R. 19, 389-90, 521-23, 675-78).

The ALJ further referenced the prior administrative medical findings from the psychological consultants, which she determined were not persuasive. The psychological medical consultants determined Plaintiff did not suffer from a severe mental impairment. (R. 20, 112-15, 128-131, 148-51, 165-68). The ALJ explained that although "the consultants supported their conclusions with a summary of the reviewed evidence, . . . they did not examine the claimant, which detract[ed] from the probative value of their findings." She found their findings were inconsistent with Plaintiff's treatment for mental health symptoms and with the objective medical findings in the record, including findings of "sad affect, flat affect, anxious appearance, and depressed mood[.]" (R. 20, 389, 676-77).

Based upon this evidence, the ALJ found Plaintiff had the mental RFC for "simple, routine tasks with occasional interaction with others; off task 10% of the time during an 8-hour workday due to mental health symptoms; and absent 1 day per month due to mental health symptoms." (R.

7

17-18). She provided the following explanation for the functional limitations she included in Plaintiff's mental RFC:

> Reports of decreased concentration, excessive worrying, and low energy; treatment for anxiety and depression; and findings of anxious appearance and depressed mood support limitations to simple, routine tasks. Crying, sad or flat affect, and anxious appearance support occasional interaction with others. Additionally, the claimant testified she experiences elevated heart rate when she is stressed. Such evidence as well as crying and anxious appearance support the off-task limitation as found herein. Low energy, depressed mood, and the presence of moderately severe depression support the absentee limitation as specified above.

(R. 19-20).

The ALJ further determined that "[t]he overall record does not contain objective findings to support the extent of the mental limitations the claimant has alleged." (R. 20). She provided the following reasons for not including additional mental limitations in the RFC:

> [E]xaminations reveal intact memory, good insight and judgment, normal thought content, pleasant and cooperative behavior, normal mood, and normal affect ([R. 421, 512-13, 680]). Additionally, treatment providers found the claimant in no distress or no acute distress, which is inconsistent with her allegations of debilitating symptoms ([R. 370, 421, 522, 530, 672, 676]). The record also shows that she works part-time helping landlords within the community and she takes care of her grandchildren, indicating greater functional ability than alleged ([R. 457-58, 637-38]). As discussed herein, the claimant also indicated she cooks, performs some household chores, and goes shopping almost every day ([R. 314-21]). Indeed, the claimant testified that she has not looked for work because she takes care of the home (Hearing Testimony) [R. 38]. Taken longitudinally, such evidence does not suggest greater restrictions than found herein. That she has to take breaks or is limited in some of these functions certainly indicates that she has some limitations, but her ability to engage in such activities along with other evidence discussed above indicates that she retains greater ability than alleged. Accordingly, the evidence as a whole does not reveal symptoms as intense, persistent, and limiting as the claimant alleges.

(R. 20).

Based upon the ALJ's discussion of the evidence and explanation of the RFC assessment, the Court finds the ALJ's RFC analysis meets the requirements of SSR 96-8p. The Court further finds that the ALJ's conclusions are supported by substantial evidence.

**Development of the Record**

As an extension of the prior argument, Plaintiff contends the ALJ failed to sufficiently develop the record as to her mental work-related functional abilities, asserting that the ALJ should have ordered a psychiatric consultative examination of Plaintiff. Although the ALJ must "ensure that an adequate record is developed . . . consistent with the issues raised[,]" she "has broad latitude in ordering consultative examinations." *Hawkins v. Chater*, 113 F.3d 1162, 1164, 1166 (10th Cir. 1997) (quotations omitted). "A consultative examination may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or 'additional tests are required to explain a diagnosis.'" *Jazvin v. Colvin*, 659 Fed. Appx. 487, 489 (10th Cir. 2016), quoting *Hawkins*, 113 F.3d at 1166; *see also* 20 C.F.R. §§ 404.1519a(b), 416.919a(b). If there is sufficient information in the record for the ALJ to make a disability determination, there is no need for further development of the record with a consultative examination. *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008).

Moreover, when a claimant is represented by counsel at the administrative hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored . . . [and] may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1167-68, citing *Glass v. Shalala*, 43 F.3d 1392, 1394-96 (10th Cir. 1994). "In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Id*. at 1168.

Plaintiff asserts that a consultative examination was necessary because the record lacked "any objective psychiatric testing such as even a basic mental status examination." *See* Docket No. 15 at 8. A review of the record, however, shows that it contained sufficient information for

9

the ALJ to make a disability determination. As discussed herein, the ALJ specifically relied on evidence from Plaintiff's treatment records, including her complaints to treatment providers, indications of moderately severe depression, and prescription medication for anxiety and depression. (R. 19). She relied upon mental status examinations, which showed that Plaintiff exhibited sad or flat affect, anxious appearance, and depressed mood, but that on other occasions Plaintiff demonstrated intact memory, good insight and judgment, normal thought content, pleasant and cooperative behavior, normal mood, and normal affect. (R. 19-20). The ALJ further considered the function report Plaintiff completed as part of her disability application (R. 16-17, 18, 20), her testimony at the hearing regarding her mental impairments and functioning (R. 18, 20), and the VE's testimony that there was work existing in the national economy that a person with Plaintiff's RFC could perform. (R. 21-22).

Further, Plaintiff's counsel did not request any additional development of the record by the ALJ, including a mental consultative examination. When specifically questioned about the status of the record, Plaintiff's counsel stated that he had reviewed the record and agreed with the ALJ that it was complete. (R. 34). Accordingly, the Court finds there was no error by the ALJ for not ordering a mental consultative examination of Plaintiff.

### Mental Limitations Included in the RFC

Plaintiff also argues that the ALJ failed to include certain functional limitations in the mental RFC. She asserts the ALJ failed to explain why there was no limitation in the RFC for adapting and managing oneself, when the ALJ concluded Plaintiff had moderate limitations in that area of functioning.

At step two, the ALJ determined Plaintiff had severe mental impairments of anxiety and depression. (R. 15). At step three, she assessed Plaintiff's mental impairments under the

"paragraph B" criteria and concluded Plaintiff had a mild limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and a moderate limitation for adapting and managing oneself. (R. 16-17). When concluding Plaintiff had a moderate limitation for adapting and managing oneself, the ALJ referenced Plaintiff's function report wherein Plaintiff reported she could not handle stress or changes in routine. The ALJ discussed evidence in the record that supported "significant limitation in the area," including notations of Plaintiff's anxious appearance on examination and her continued treatment for mental health symptoms, but she also noted that Plaintiff's activities, such as managing her own household, preparing meals, washing laundry, picking up medication, and grocery shopping, demonstrated Plaintiff had "some ability to maintain her well-being." (R. 17). Overall, the ALJ determined the "paragraph B" criteria were not satisfied because Plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitation. (R. 17).

The ALJ also correctly noted that the limitations she identified when assessing the "paragraph B" criteria were not an RFC assessment, and that the mental RFC required a more detailed assessment of Plaintiff's mental functioning. (R. 17); *see* SSR 96-8p, 1996 WL 374184, at *4 ("The adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). In fact, the finding of a moderate limitation for the "paragraph B" criteria does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment. *See, e.g., Beasley v. Colvin*, 520 Fed. Appx. 748, 754 (10th Cir. 2013) (noting that "[t]he ALJ was under no obligation to include limitations in social functioning in [the] RFC based solely on his finding that she had 'moderate difficulties' in social

11

functioning as part of the distinct step-three analysis."); *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.").

The Court finds no error by the ALJ regarding the step three finding of a moderate limitation in Plaintiff's adapting and managing herself and Plaintiff's mental RFC.  As discussed herein, the ALJ thoroughly discussed Plaintiff's testimony and reports on the function report, her mental health treatment, and the results of mental examinations.  (R. 18-20).  Although the ALJ found Plaintiff had a moderate limitation in adapting or managing herself at step three, when determining the RFC, the ALJ determined that the evidence supported mental limitations for "simple, routine tasks with occasional interaction with others; off task 10% of the time during an 8-hour workday due to mental health symptoms; and absent 1 day per month due to mental health symptoms."  (R. 17-18).  She determined that the evidence did not support "greater restrictions" than those included in the RFC.  (R. 20).

Plaintiff further contends that the evidence supports a greater limitation in the RFC for Plaintiff's ability to maintain attention and concentration.  In reaching the RFC determination, the ALJ considered Plaintiff's complaints that she had difficulties completing tasks, concentrating, understanding, and following instructions.  (R. 18).  She also considered examination findings of Plaintiff's intact memory, good insight and judgment, normal thought content, cooperative behavior, and normal mood and affect as well as Plaintiff's reports that she did part-time work helping landlords, took care of her grandchildren, performed household chores, and went shopping nearly every day.  (R. 20).  Based upon this evidence, the ALJ included limitations in the RFC for simple, routine tasks with Plaintiff being off-task 10% of the time because of her mental health

symptoms. (R. 17-18). The Court finds the limitation included by the ALJ in the RFC is supported by the evidence and views Plaintiff's argument as a request for the Court to re-weigh the evidence or substitute its judgment for that of the Commissioner, which the Court cannot do. *See Casias*, 933 F.2d at 800.

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 14th day of July, 2023.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRCT COURT